Elena Garella, WSBA 23577
Email: egarella@gmail.com
Law Office of Elena Garella, PLLC
2775 Harbor Ave SW, Ste D
Seattle, WA 98126
Telephone: (206) 675-0675
*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| DARREN HUNTER,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF CHELAN, a political subdivision of the State of Washington; COUNTY OF CHELAN SHERIFF MIKE MORRISON, in his official capacity; CYRUS BOWTHORPE, in his official and individual capacities; JERROD BIGGAR, in his official and individual capacities; BRIAN LEWIS, in his official and individual capacities; JOSHUA MATHENA, in his official and individual capacities; DOMINIC MUTCH, in his official and individual capacities; and ERNIE SENSENEY, in his official and individual capacities.<br><br>Defendants. | No. 2:26-cv-319<br><br>Hon. Rebecca L. Pennell<br><br>**FIRST AMENDED COMPLAINT** |

## I. INTRODUCTION

1. This wrongful arrest and imprisonment case exemplifies the grave harm that is caused when officers are not adequately trained and where those in charge disregard the systemic failure of the police to carry out their duties as required by law.

2. Over the last several years, Chelan County, through the Chelan County Sheriff's Office ("CCSO)" has arrested, charged, and imprisoned men charged with sexually-motivated crimes based on uncorroborated "victim" reports. The County then broadcasts the identities of those arrested and the nature of the alleged crimes throughout the community. Months later, after the accused have suffered humiliation, unjustified imprisonment, huge expenses, the contempt of their fellow citizens, and other damages, the County quietly dismisses the prosecutions.

3. What makes the Defendants' conduct particularly troubling is that Chelan County was the seat of the infamous Wenatchee child "sex ring" prosecutions of 1994 and 1995, when multiple innocent persons were arrested and imprisoned based on false charges. Apparently, the County has learned little. It still accuses men of sex crimes on thin or non-existent evidence, and locks them up for long stretches without probable cause.



LAW OFFICE OF
ELENA GARELLA pllc
2775 Harbor Avenue SW Suite D
Seattle WA 98126

4. Plaintiff Darren Hunter is one of the County's recent victims. He was falsely accused of having raped and kidnapped Rachel Kennedy, a local sex worker. He was arrested in a manner that was calculated to create a public spectacle and to subject him to maximum humiliation. The CCSO trumpeted his arrest with a press release.

5. The Defendants were aware that there was no probable cause supporting the charges against Mr. Hunter. Defendant Bowthorpe carefully crafted his Affidavit of Probable Cause to shield pertinent information from the prosecutors and the judicial officer who were charged with reviewing it. Within days after the arrest, there was additional evidence that Mr. Hunter was being held without probable cause. Instead of quickly asking the Prosecuting Attorney to release Mr. Hunter with an apology, the Defendants' misconduct kept him in jail for over four months, and then under house arrest for another six months. The County then dropped the charges.

6. Of course, the CCSO did not publicize its error as it had Mr. Hunter's arrest. As a result of the County's conduct, Mr. Hunter continues to live under a cloud of suspicion which has greatly harmed his relationships and his reputation.

7. Mr. Hunter brings this action under 42 U.S.C. §1983, for violation of his Fourth Amendment right to be free of unreasonable seizure of his person and



LAW OFFICE OF
ELENA GARELLA pllc
2775 Harbor Avenue SW Suite D
Seattle WA 98126

his extended, unreasonable pre-trial detention, without probable cause. He seeks damages in compensation for his unlawful and humiliating arrest and imprisonment, mental and physical pain and suffering, the damage to his reputation, attorneys' fees pursuant to 42 U.S.C. §1988, and declaratory relief.

## II. JURISDICTION & VENUE

8. Because this civil rights action arises under the United States Constitution, this Court has jurisdiction under Article III of the Constitution and under 28 U.S.C. §§ 1331 and 1343(3) and (4). The relief sought is authorized by the United States Constitution and by 42 U.S.C. § 1983.

9. Declaratory relief is authorized under 28 U.S.C. §§ 2201 and 2202.

10. Venue is proper in this Court according to 28 U.S.C. § 1391(b) because most incidents, events, and occurrences giving rise to this action occurred in the Eastern District of Washington and because all Parties are domiciled in the Eastern District of Washington.

## III. PARTIES

11. Plaintiff Darren Hunter is 55 years old. He is a resident of the City of Chelan, in Chelan County, Washington. He was a resident of the City of Chelan for all times relevant to this action. Mr. Hunter was formerly a professional bicycle racer. He has a master's degree in special education from Seattle University. He



LAW OFFICE OF
ELENA GARELLA pllc
2775 Harbor Avenue SW Suite D
Seattle WA 98126

then taught for over twenty years, working with children with autism. Mr. Hunter has two daughters, born of a marriage that ended in divorce. Before he was wrongly accused of rape and kidnapping, he was developing a career in real estate. He now works as a plumber.

12. Defendant County of Chelan ("Chelan County") is a political subdivision of the State of Washington. Chelan County includes the Chelan County Sheriff's Office ("CCSO") and the Prosecuting Attorney's Office.

13. Defendant Mike Morrison is the Sheriff of Chelan County. As Sheriff, he is the highest official within the Chelan County Sheriff's Office and is responsible for that Office's actions, customs, policies, and employee training. Defendant Morrison has served as Sheriff for Chelan County since January 1, 2023. He was the Sheriff of the County at the time of the Chelan County Sheriff's Office's investigation into the claims against Mr. Hunter and Mr. Hunter's arrest. Mr. Morrison is sued in his official capacity.

14. At all times relevant to this Complaint, Defendant Cyrus Bowthorpe was employed as a detective with the CCSO. Defendant Bowthorpe was the Investigating Deputy on the Darren Hunter matter and was involved in the arrest of Mr. Hunter. He also wrote the Affidavit of Probable Cause for the arrest. Defendant Bowthorpe is sued in his individual capacity and in his official capacity.



LAW OFFICE OF
ELENA GARELLA pllc
2775 Harbor Avenue SW Suite D
Seattle WA 98126

15. At all times relevant to this Complaint, Defendant Jerrod Biggar was employed as a Deputy with the CCSO. He was on the team of officers that arrested Mr. Hunter. Defendant Biggar is sued in his individual capacity and in his official capacity.

16. At all times relevant to this Complaint, Defendant Brian Lewis was employed as a Sergeant with the CCSO. He assisted Defendant Bowthorpe with the investigation and was an officer who arrested Mr. Hunter. Defendant Lewis is sued in his individual capacity and in his official capacity.

17. At all times relevant to this Complaint, Defendant Joshua Mathena was employed as a Sergeant with the CCSO. He assisted Defendant Bowthorpe with the investigation. He was on the team of officers that arrested Mr. Hunter. Defendant Mathena is sued in his individual capacity and in his official capacity.

18. At all times relevant to this Complaint, Defendant Dominic Mutch was employed as a Deputy with the CCSO. Defendant Mutch assisted in the investigation of Mr. Hunter and was one of the officers on the team that arrested Mr. Hunter. He is sued in his individual capacity and in his official capacity.

19. At all times relevant to this Complaint, Defendant Ernie Senseney was employed as a detective with the CCSO. He was in the team of officers who arrested Mr. Hunter. On information and belief, Defendant Senseney assisted



LAW OFFICE OF
ELENA GARELLA pllc
2775 Harbor Avenue SW Suite D
Seattle WA 98126

Defendant Bowthorpe with the investigation. He is sued in his individual capacity and in his official capacity.

Note: All Defendants are obligated to retain all video, notes, emails, texts and all other records relating to the investigation, arrest, prosecution and detention of Mr. Hunter.

## IV. FACTUAL BACKGROUND

**The "investigation" of Mr. Hunter.**

20. The entirety of Defendants' investigation can be quickly described. On or about July 28, 2023, Defendants Brian Lewis and Cyrus Bowthorpe of the CCSO conducted a phone interview with Rachel Kennedy, a sex worker who advertises her services online. Ms. Kennedy told Lewis and Bowthorpe that Mr. Hunter is a "perv" and made other scandalous statements about Mr. Hunter, including grotesque claims that he has sex with children and views repellant films featuring incest, children having sex, and murder committed for sexual gratification. Ms. Kennedy's claims were, and are, false. Nor were they pertinent to the eventual charges against Mr. Hunter.

21. After meeting with Mr. Hunter on July 29, 2023, Ms. Kennedy sent Sergeant Lewis photographs of her neck with red marks on it. The photographs were accompanied by a message stating:



LAW OFFICE OF
ELENA GARELLA pllc
2775 Harbor Avenue SW Suite D
Seattle WA 98126

> but no one cares cuz I'm just an escort, and I should expect this kind of thing, right? I don't think the word rape can be said by someone in my profession and be taken seriously, either. It doesn't matter; nothing matters; it is what it is, and I'll get over it. I don't expect anyone to do anything about it; I just want to make sure that it's known he [Mr. Hunter] hasn't stopped being a rapist, and he hasn't stopped hurting women.

22. By phone at 7:30 pm on July 29, 2023, Ms. Kennedy told Sergeant Lewis that she had visited Mr. Hunter at his residence that day and that Mr. Hunter had raped her, ejaculating inside her vagina. She also claimed that Mr. Hunter "grabbed her lanyard which she keeps her keys on and wears around her neck" and that he "kept twisting it and twisting it until it unbuckled in the back." She said that he choked her and slapped her.

23. Following this fictional rape and assault, according to Ms. Kennedy, Mr. Hunter refused to return her car keys to her and took her against her will to Chelan Falls, where she claimed she thought he "was planning to sell her." Instead of selling her, however, Ms. Kennedy acknowledged that Mr. Hunter returned her to her vehicle in Chelan. Ms. Kennedy claimed that Mr. Hunter ordered her to accompany him to Seattle the next day "or else the next girl he finds is going to get it."

24. None of this was true. Ms. Kennedy and Mr. Hunter engaged in some sexual contact on July 29, 2023 to which both consented. There was no sexual



LAW OFFICE OF
ELENA GARELLA pllc
2775 Harbor Avenue SW Suite D
Seattle WA 98126

intercourse. There was no rape. There was no violence.

25. After the consensual encounter, Mr. Hunter told Ms. Kennedy that he was going to a store in Chelan Falls. She volunteered to accompany him, stating that there was a location near the store where she, a self-described "rockhound," stated she would like to collect some rocks. It turned out that the store was closed, but Mr. Hunter and Ms. Kennedy did stop at an erosion site, where Ms. Kennedy collected a few stones. Mr. Hunter then drove her back to her car, which was near his home in the city of Chelan. Mr. Hunter never abused Ms. Kennedy, never invited her to Seattle, and never threatened other women.

**<u>Defendants' confidence in a source they knew to be unreliable</u>.**

26. The CCSO was aware Ms. Kennedy was not a reliable source of information. She claimed that Mr. Hunter had "bragged" that he picked up a 16-year-old hitchhiker on July 27, 2023 and had sex with the girl. Ms. Kennedy stated that Mr. Hunter provided her with pictures of the young hitchhiker. But when other CCSO officers (Deputy Mutch and Deputy Senseney) examined the pictures, they positively identified the supposed sixteen-year-old victim as Anastasia Larionova. Ms. Larionova was then 46 years old. She is a friend of Mr. Hunter's.

27. Ms. Kennedy advised Defendants Lewis and Bowthorpe that Mr. Hunter had been fired from a teaching job for raping a minor. This was also false,



LAW OFFICE OF
ELENA GARELLA pllc
2775 Harbor Avenue SW Suite D
Seattle WA 98126

and the Defendants either knew it was false or should have established that it was false.

28. Ms. Kennedy told Defendants Lewis and Bowthorpe that she was "110% [sure] he [Mr. Hunter] is going to kidnap a girl." Based on this claim, the CCSO set up a "sting" on July 28, 2023. This was an attempt to entice Mr. Hunter into agreeing to have sexual relations with a fictitious teenage girl. Guided by Defendants Lewis and Bowthorpe, Ms. Kennedy called Mr. Hunter on a recorded line, offering him a "date" with a teenage girl. Mr. Hunter declined to take the bait. The sting failed, despite Ms. Kennedy's certainty that Mr. Hunter wanted to have sex with a minor.

29. The CCSO knew that Ms. Kennedy abused drugs which have the effect of altering mood and perception.

30. The CCSO was aware that Rachel Kennedy did not cooperate with police instructions and was acting for her own purposes. On July 28, 2023, Defendants Lewis and Bowthorpe directed Ms. Kennedy to not go to Mr. Hunter's home. On July 29, 2023, Ms. Kennedy told Defendant Lewis that she planned to meet with Mr. Hunter. Defendant Lewis told Ms. Kennedy "to not do that." He explained it was the CCSO's intent to cut her out of the investigation. Ms. Kennedy met with Mr. Hunter in his house despite the officers' direct instruction.



LAW OFFICE OF
ELENA GARELLA pllc
2775 Harbor Avenue SW Suite D
Seattle WA 98126

31. Defendant Chelan County and Defendants Morrison, Bowthorpe, Biggar, Lewis, Mathena, Mutch, and Senseney knew, or should have known, that Ms. Kennedy's stories were inaccurate, false and unreliable. They knew, or should have known, that Ms. Kennedy was on a mission to provide misinformation about Darren Hunter to the authorities. The failure to consider the clear indicia of Ms. Kennedy's lack of reliability was in reckless disregard of the truth.

32. Despite clear warning signs establishing Ms. Kennedy's lack of truthfulness, Defendants Chelan County, Bowthorpe, and Lewis did not perform a sufficient investigation of Ms. Kennedy's accusations. Rather, they simply accepted her stories at face value. They undertook their investigation based on their initial belief in the supposed victim.

33. Nobody from the CCSO interviewed Mr. Hunter or other witnesses, including Mr. Hunter's parents, who live in a house on the same property as Mr. Hunter's home. Had such interviews been conducted, the CCSO would have learned that there was a video camera mounted on the Hunter property for security purposes.

34. Nobody from the CCSO reviewed the video from the security camera. It shows Ms. Kennedy and Mr. Hunter leaving his residence on the afternoon of July 29, 2023. Ms. Kennedy was the first person to leave the home. Mr. Hunter



LAW OFFICE OF
ELENA GARELLA pllc
2775 Harbor Avenue SW Suite D
Seattle WA 98126

did not control her movements.

35. Ms. Kennedy claimed that Mr. Hunter "grabbed her lanyard which she keeps her keys on," that he "kept… twisting it until it unbuckled" and that he kept Ms. Kennedy's keys in his possession so that he could force her to go with him to Chelan Falls.

36. The video discloses the facts. It shows that the lanyard was still around Ms. Kennedy's neck, with her keys and her drug kit, as she and Mr. Hunter exited his home. It also shows that Ms. Kennedy stood outside of Mr. Hunter's car and waited as Mr. Hunter entered the car and unlocked the passenger-side door for her. She then freely got into his car.

37. The video taken by Mr. Hunter's mounted camera establishes that Ms. Kennedy's story that she was kidnapped by Mr. Hunter is false. It was crucial evidence that should have been sought and secured from the onset of the investigation. There was no good reason not to collect and view said evidence.

38. Nobody from the CCSO compared the results of Ms. Kennedy's SANE (sexual assault) kit with Mr. Hunter's DNA. Ms. Kennedy claimed that Mr. Hunter had ejaculated in her. On information and belief, Mr. Hunter's DNA was readily available to the CCSO through the Washington State Patrol. Even if it was not, Mr. Hunter would have simply provided a DNA sample to the CCSO upon



LAW OFFICE OF
**ELENA GARELLA pllc**
2775 Harbor Avenue SW Suite D
Seattle WA 98126

request—had a detective simply asked him for it.

39. Had the defendants compared the results of Ms. Kennedy's SANE (sexual assault) kit with Mr. Hunter's DNA, they would have learned that Ms. Kennedy was lying. Mr. Hunter did not ejaculate inside her. Mr. Hunter did not rape her. Her story was fictional.

40. Defendants Chelan County, Bowthorpe, and Lewis conducted the investigation of Mr. Hunter in reckless disregard for the truth, and with deliberate indifference to Mr. Hunter's rights.

**Darren Hunter's arrest**.

41. At about nine a.m. on Sunday, July 30, 2023, Defendants Bowthorpe, Biggar, Lewis, Mathena, Mutch, and Senseney served a search warrant on Mr. Hunter.

42. The officers planned to arrest Mr. Hunter at the search. Notwithstanding this plan, and the available opportunity to request an arrest warrant, the CCSO and Defendant Bowthorpe did not request an arrest warrant from the Superior Court.

43. The morning of the arrest, Mr. Hunter was at home with his 49-year-old partner, Tara. The couple heard a number of vehicles approaching Mr. Hunter's home.



LAW OFFICE OF
ELENA GARELLA pllc
2775 Harbor Avenue SW Suite D
Seattle WA 98126

44. Shortly after hearing the automobiles, the couple heard pounding on both of Mr. Hunter's doors.

45. Mr. Hunter responded to his back door, facing the alley. He was immediately confronted by Defendant Mathena and Defendant Biggar, who put Mr. Hunter in handcuffs that were so tight they caused Mr. Hunter pain. Two other Defendants, believed to be Defendants Lewis and Senseney, man-handled Mr. Hunter outside and forced him to a Sheriff's vehicle.

46. As Mr. Hunter was forced outside, he was shocked to see over a dozen police vehicles at his property. They were from various agencies, including the CCSO, Homeland Security, an unsolved crimes task force, and the Washington State Patrol. The various officers were armed with tactical weapons, including patrol rifles.

47. Mr. Hunter did not know why he was being arrested. He could not imagine any reason for such a large police presence.

48. Upon reaching the Sheriff's vehicle, one of the Defendants, believed to be Defendant Mutch, advised Mr. Hunter (paraphrased) "You should tell us everything you have done now, we can make a deal, come up with something you can live with." Mr. Hunter had no idea what the officer was referring to. This comment, among others, caused Mr. Hunter great confusion and anxiety.



LAW OFFICE OF
ELENA GARELLA pllc
2775 Harbor Avenue SW Suite D
Seattle WA 98126

49. Mr. Hunter lives in a populous area in the City of Chelan. The "perp walk" and detention of Mr. Hunter was conducted in front of over thirty people. These were members of his community who had just left church or were at a coffee shop across the street from the back door of Mr. Hunter's home. Mr. Hunter was distressed and humiliated by being placed on public display under circumstances which would lead observers to conclude that he is an evil and dangerous person.

50. While Mr. Hunter was detained and arrested, other Defendants conducted a search of Mr. Hunter's house.

51. When the Defendants entered Mr. Hunter's home, Mr. Hunter's partner, Tara, was still in bed.

52. The officers were demeaning to Tara. As she reached from under the covers for her underclothes, Defendant Bowthorpe snatched her underwear and bra from the floor, advising her "these are evidence now." There was no reason to seize Tara's underclothes other than the hope of seeing Tara get out of bed nude.

53. During the search, one of the Defendants, believed to be Defendant Biggar, told Tara that Mr. Hunter is "going to kill and rape some 16-year-old."

54. Defendant Bowthorpe spoke to Dan Hunter, Mr. Hunter's father. He told Dan Hunter, that Mr. Hunter is "done, we've got him now, we have his DNA—we are going to match his DNA to unsolved murders and rapes across the



LAW OFFICE OF
ELENA GARELLA pllc
2775 Harbor Avenue SW Suite D
Seattle WA 98126

state."

55. These unnecessary comments and indignities, among others, were gratuitous and cruel. They were intended to disrupt and damage Mr. Hunter's relationships with his loved ones.

56. During the search, Dan Hunter advised the Defendants that there was a camera mounted on the Hunter property that had recorded the events of the previous day. One of the Defendants (believed to be Defendant Bowthorpe) stated that the CCSO would be back with a warrant to collect the footage. Dan Hunter offered to give the Defendants the security video then and there. The Defendants did not accept the offer. Nor did they ever return to obtain the video.

57. Defendant Mutch took Mr. Hunter to the Chelan County Jail in his CCSO vehicle. Defendant Mutch ignored Mr. Hunter's request for his eyeglasses. Defendant Mutch ignored Mr. Hunter's request to loosen the handcuffs so that they would not cause pain.

58. Every Defendant whom Mr. Hunter encountered on the day of his arrest advised Mr. Hunter that he was wearing an activated body-worn camera.

59. At about 10:30 a.m. on June 30, 2023, Mr. Hunter was booked into the Chelan County Regional Jail on charges of Rape First Degree (RCW 9A.44.040) and Assault 2nd Degree (RCW 9A.36.021).



LAW OFFICE OF
ELENA GARELLA pllc
2775 Harbor Avenue SW Suite D
Seattle WA 98126

60. Mr. Hunter should not have been jailed before the CCSO received the crime lab results, especially where the alleged victim reported that Mr. Hunter ejaculated inside of her. Nor should Mr. Hunter have been jailed before the CCSO reviewed the available footage taken by Mr. Hunter's video camera on July 29, 2023. Nor should he have been jailed based on the reports of an unreliable complainant who was seeking to destroy Mr. Hunter at all costs.

61. The custodial arrest was the result of the investigators' failure to thoroughly investigate. Instead, they accepted and reacted to mere allegations. Defendants Chelan County, Morrison, Bowthorpe, Biggar, Lewis, Mathena, Mutch, and Senseney acted with deliberate and/or reckless indifference to whether Mr. Hunter was guilty or innocent.

62. On July 30 or 31, 2023, the CCSO issued a press release announcing that Mr. Hunter had been arrested on charges of first-degree rape and assault in the second degree. The press release implied that Mr. Hunter was fired from his middle school teacher position because he had sexual contact with a student, an inference that is false. It also stated that "[d]etectives have reason to believe Hunter may have committed additional unreported crimes" and sought information from the public.

63. As a result of the press release, media outlets broadcast the arrest and



LAW OFFICE OF
ELENA GARELLA pllc
2775 Harbor Avenue SW Suite D
Seattle WA 98126

the CCSO's belief that Mr. Hunter had committed additional crimes. Social media, such as Facebook, picked up the story. Suspicions of Mr. Hunter spread throughout his community. He became an object of contempt. The publicity damaged Mr. Hunter's reputation and relationships, as the Defendants knew would occur.

64. The damage continues even now, years later. The media reports remain on-line and are easily available to anyone who conducts an internet search for "Darren Hunter Chelan." The press release is still online at the CCSO's archives: www.co.chelan.wa.us/files/sheriff/archives/2023/July/23C08292%20Rape%20Arrest%20In%20Chelan%20Area.pdf

**<u>Defendant Bowthorpe submits a misleading Affidavit of Probable Cause</u>.**

65. On or about July 30, 2023, the Chelan County Prosecutor's Office authorized Defendant Bowthorpe to seek a warrant to arrest Mr. Hunter for Rape in the First Degree (RCW 9A.44.040), Assault in the Second Degree (RCW 9A.36.021), and Kidnapping in the First Degree (RCW 9A.40.030).

66. Following Mr. Hunter's warrantless arrest, Defendant Bowthorpe prepared an Affidavit of Probable Cause.

67. Because it is sworn under oath and may be the basis for the continued detention of a person, an Affidavit of Probable Cause must honestly and accurately represent the state's basis for a warrant to the judicial officer.



LAW OFFICE OF
ELENA GARELLA pllc
2775 Harbor Avenue SW Suite D
Seattle WA 98126

68. Defendant Bowthorpe's Affidavit of Probable Cause was faulty and misleading.

69. Defendant Bowthorpe failed to advise the court that Ms. Kennedy had supported her claim that Mr. Hunter had raped a sixteen-year-old child with a photograph of the alleged victim that the CCSO determined depicted a 46-year old friend of Mr. Hunter's. This information should have been noted in the Affidavit so the court could evaluate all the pertinent information, including this clear indication that Ms. Kennedy is not reliable.

70. Defendant Bowthorpe failed to disclose to the court that Ms. Kennedy had, contrary to his and Defendant Lewis's instructions, visited Mr. Hunter in his home. This information should have been noted in the Affidavit so the court could evaluate all the pertinent information, including this indication that Ms. Kennedy is not reliable.

71. Defendant Bowthorpe failed to disclose to the court that there was video evidence available showing Ms. Kennedy entering and leaving Mr. Hunter's home on the day of the alleged rape and kidnapping. He failed to advise the court that this video could corroborate or controvert Ms. Kennedy's report. He failed to advise the Court that the CCSO had neither obtained nor reviewed this evidence. This information should have been noted in the Affidavit so the court could



LAW OFFICE OF
ELENA GARELLA pllc
2775 Harbor Avenue SW Suite D
Seattle WA 98126

evaluate the investigation, which made its conclusions exclusively on the word of the unreliable Ms. Kennedy.

72. While Defendant Bowthorpe disclosed that Ms. Kennedy had been administered a SANE (sexual assault) kit, he failed to disclose that Mr. Hunter's DNA was already available to the CCSO through the Washington State Patrol's laboratory, nor did he disclose that he had failed to request DNA from Mr. Hunter.

73. Defendant Bowthorpe did not advise the court that the rape kit's results could readily be compared to Mr. Hunter's DNA, and that those results would corroborate or controvert Ms. Kennedy's allegations. This information should have been noted in the Affidavit of Probable Cause so the court could evaluate the comprehensiveness of the investigation and consider whether Mr. Hunter could remain out of detention pending the laboratory's report.

74. Defendant Bowthorpe's failures to disclose were particularly important given that the Affidavit relied almost exclusively on Ms. Kennedy's verbal statements.

75. Not only did Defendant Bowthorpe's Affidavit of Probable Cause fail to include the exculpatory information, it included inaccurate, irrelevant, and offensive statements.

76. Defendant Bowthorpe advised the Court that Mr. Hunter had



LAW OFFICE OF
ELENA GARELLA pllc
2775 Harbor Avenue SW Suite D
Seattle WA 98126

committed a “rape in Kent.” In fact, Mr. Hunter was convicted of Assault 4th Degree with Sexual Motivation, a misdemeanor. There was no rape. Mr. Hunter was not (and is not) a registered sex offender. Indeed, had the CCSO reviewed the evidence in the Kent case, they would have discovered that the alleged victim's claims were quickly determined to be false based on the text messages she exchanged with Mr. Hunter and the information contained therein.

77. In his Affidavit of Probable Cause, Defendant Bowthorpe included statements by Ms. Kennedy that Mr. Hunter watched a video of a minor girl being raped by her father and other false and malicious allegations that Mr. Hunter abuses children sexually.

78. Defendant Bowthorpe underscored the child sexual abuse claims by noting that during his search “I located a one-piece swimsuit which appeared to be designed for a young girl.” He did not disclose to the court the size of the swimsuit. Nor did he mention that Mr. Hunter has two daughters, one of whom was seventeen years old in July of 2023. The swimsuit was hers, left in Mr. Hunter’s car after he and his daughters went swimming a few weeks before.

79. The misinformation strongly implied that Mr. Hunter victimizes young girls, a horrendous and prejudicial claim. That claim was not related to the crimes for which Defendant Bowthorpe sought a finding of probable cause.



LAW OFFICE OF
ELENA GARELLA pllc
2775 Harbor Avenue SW Suite D
Seattle WA 98126

80. Defendant Bowthorpe's Affidavit of Probable Cause contained such glaring omissions and misrepresentations that they cannot be the product of mere negligence alone. He crafted the Affidavit to convince the court to find probable cause, rather than to fully inform the court of relevant weaknesses in the investigation and the unreliability of the so-called victim.

81. Defendant Bowthorpe's Affidavit of Probable Cause was presented to the Superior Court of Washington, Chelan County, on the afternoon of July 30, 2023, following Mr. Hunter's arrest.

82. In reliance on Defendant Bowthorpe's Affidavit of Probable Cause, Chelan County Superior Court Judge Ferrara found probable cause, leading to over four months of incarceration for Mr. Hunter, and then a six-month confinement in his home. The Judge was misled by an Affidavit of Probable Cause that set forth information that affiant Defendant Bowthorpe either (1) knew was false or (2) would have known was false had he not recklessly disregarded the truth.

83. Had Defendant Bowthorpe presented an affidavit without these defects, the trial court would not have found probable cause.

**<u>Mr. Hunter's Pre-arraignment detention</u>.**

84. When booked into the Chelan County Regional Jail (*see* ¶57, *supra*) Mr. Hunter was not told what his charges were. He was aware that something



LAW OFFICE OF
ELENA GARELLA pllc
2775 Harbor Avenue SW Suite D
Seattle WA 98126

serious was alleged. When he asked why he was issued a yellow inmate jumpsuit (rather than a green or red one), Correctional Officer Ponzi told him: "because you are f***ing high risk."

85. Mr. Hunter spent three days in total isolation before his first court appearance. He could not read, because the jail would not provide him with his eyeglasses. He could not call anyone, because the phone card provided to him by the jailors did not function. When he asked for his glasses or a working phone card, the jailors ignored him. He was detained in a bare cell. He was allowed out of the cell only once for 'exercise' in a larger room with a small area in which to walk.

**Mr. Hunter's initial court appearances.**

86. The prosecutors in the Chelan County Prosecuting Attorney's Office were also shocked and enraged by the content of the Affidavit of Probable Cause.

87. On July 31, 2023, the Prosecuting Attorney's Office demanded that the Superior Court set cash bail for Mr. Hunter at $5,000,000. The Court agreed, setting cash bail at $5,000,000. The Superior Court's record is silent as to why such a high bail was requested, and devoid of the findings required by Washington Criminal Rule 3.2.

88. $5,000,000 was among the ten highest bail amounts set in the State of



LAW OFFICE OF
ELENA GARELLA pllc
2775 Harbor Avenue SW Suite D
Seattle WA 98126

Washington in 2023.

89. On information and belief, the prosecutors demanded the high bail amount because of the scurrilous allegations in the Affidavit of Probable Cause, and the absence of the available relevant exculpatory evidence. The prosecutors credited the Affidavit's claims that Mr. Hunter was engaged in the serial rape and murder of young girls and reminded the Court of those claims. The Affidavit incited the passions of the prosecutors.

90. On or about August 2, 2023, Mr. Hunter was taken from the jail for his first appearance in court.

91. The Prosecuting Attorney filed an Information under cause No. 23-1-00326-94, charging Mr. Hunter with the following: Rape in the First Degree, Assault in the Second Degree, Robbery in the First Degree, Kidnapping in the First Degree, and violations of the Uniform Controlled Substances Act.

92. This was the first time that Mr. Hunter learned the nature of the charges against him. He was staggered by the accusations. He could not understand why he was being accused of rape, assault, and kidnapping charges.

93. When the Judge suggested a two-million-dollar bail, Prosecutor Micaela Meadows argued that two million "isn't enough because of all the minor victims he has been abusing," or words to that effect. Ms. Meadows made that



LAW OFFICE OF
ELENA GARELLA pllc
2775 Harbor Avenue SW Suite D
Seattle WA 98126

statement in reliance on Defendant Bowthorpe's defective Affidavit of Probable Cause and its irrelevant, unfounded, accusations.

94. As a result, the court maintained the cash bail for Mr. Hunter at $5,000,000.

95. Mr. Hunter did not have $5,000,000 available. That amount operated effectively as a denial of bail in violation of the 8th Amendment.

96. Following the hearing, Mr. Hunter was returned to the jail for pre-detention confinement. On the way back, one of the correctional officers accompanying him sneered: "Where you are going, they don't take kindly to sex offenders, especially what you did."

97. Mr. Hunter was taken out of isolation and placed in a special offenders unit. He was unable to review the charges against him because he still did not have his glasses. After about two weeks, a correctional officer finally provided them to him.

98. Mr. Hunter was held in the Chelan County Regional Jail for over nineteen weeks.

99. For the first month, Mr. Hunter was denied a functioning phone card. To speak with his attorney, friends, and family, he had to borrow a phone card from another inmate, which was rarely possible.



LAW OFFICE OF
ELENA GARELLA pllc
2775 Harbor Avenue SW Suite D
Seattle WA 98126

100. Mr. Hunter's yellow jumpsuit made him a target of abuse from other inmates. Frequent announcements on the North Central Washington television news stated that Mr. Hunter, a "former teacher" was charged with kidnapping and rape. The announcements stated that the CCSO was looking for additional information linking Mr. Hunter to additional victims, including minors. This publicity caused additional abuse of Mr. Hunter.

101. Mr. Hunter was compelled to ally with a racially segregated group of inmates for his own protection. Despite this, he was frequently challenged to fight by men who wanted to see him charged with additional felonies.

102. When Mr. Hunter was visited by friends and family, the correctional officers would intentionally not call his name, so the visits would not occur. This maltreatment was directed only at Mr. Hunter.

103. Mr. Hunter also suffered the standard discomforts and indignities of jail, the lack of privacy, the boredom, the noise, and the forced company of other persons, some of whom were very unpleasant.

**Further evidence of Ms. Kennedy's untruthfulness comes to light while Mr. Hunter is in jail.**

104. During Mr. Hunter's detention, additional information came to light, and additional evidence was readily available, that establishes that Mr. Hunter was



LAW OFFICE OF
ELENA GARELLA pllc
2775 Harbor Avenue SW Suite D
Seattle WA 98126

being held in jail without probable cause.

105. On July 29, 2023, Ms. Kennedy told Defendant Lewis that Hunter had taken her keys, refused to give them back to her, and kept them from her while he drove her to Chelan Falls. *See* ¶22, above. Mr. Bowthorpe presented these allegations in his Affidavit of Probable Cause. A day later, on July 31, 2023, Ms. Kennedy changed her story, telling Defendant Lewis that she in fact had her keys under her own control.

106. Defendants Chelan County and Bowthorpe did not advise either the prosecutor or the Superior Court that Ms. Kennedy had revised her claims about Mr. Hunter's alleged possession of the keys. The changes in her story should have been presented to the court so that it could reconsider the finding of probable cause and/or the amount set for bail. The court would have learned that the only witness against Mr. Hunter was unreliable, leaving little or no credible evidence supporting the finding of probable cause for the kidnapping and rape charges.

107. The CCSO took two of Mr. Hunter's phones and his laptop into evidence on July 30, 2023. The CCSO promptly downloaded the data on those devices and discovered that there was nothing on them that supported Ms. Kennedy's claims that Mr. Hunter had raped, assaulted, and kidnapped her. The CCSO also discovered that nothing on the devices supported Ms. Kennedy's



LAW OFFICE OF
ELENA GARELLA pllc
2775 Harbor Avenue SW Suite D
Seattle WA 98126

claims that Mr. Hunter was involved in pedophilia or child rape or watching material relating to those activities.

108. The Defendants did not advise the Superior Court or the prosecutor that Mr. Hunter's phones and computer did not support the narrative told by the only witness against Mr. Hunter. This information should have been promptly reported so that the court could reconsider the finding of probable cause and/or the high bail required. The failure to do so shows Defendants' reckless disregard of the truth, gross incompetence and/or malicious intent to keep Mr. Hunter in jail.

109. The CCSO issued a press release seeking information from the public about Mr. Hunter. It stated:

> On 7/30/23 at approximately 0930 hrs, Chelan County Sheriff's Office detectives arrested 52 year old Darren D. Hunter, on charges of Rape 1st degree and Assault 2nd degree…
>
> Detectives have reason to believe Hunter may have committed additional unreported crimes. If you have any information that could be helpful to detectives please call the Chelan County Sheriff's Office Tip Line at (509) 667-6845.

The media covered the arrest and reported the request for tips.

110. On information and belief, neither Defendants Morrison, Bowthorpe, Biggar, Lewis, Mathena, Mutch, and Senseney, nor anyone else at the CCSO, received any credible information that Mr. Hunter was or is a sex criminal. The absence of credible reports undermines the narrative set forth in the Affidavit of



LAW OFFICE OF
ELENA GARELLA pllc
2775 Harbor Avenue SW Suite D
Seattle WA 98126

Probable Cause. The Defendants should have advised the prosecutor so that this information could be brought to a judicial officer.

111. On December 11, 2023, Ms. Kennedy sued Mr. Hunter civilly (Chelan County case #23-2-00873-04).

112. In her civil action, Ms. Kennedy alleged that Mr. Hunter also raped her on July 24, 2023, an incident that she did not report to Defendants Bowthorpe and Lewis. Ms. Kennedy's civil Complaint states that on July 29, 2023, Mr. Hunter raped her a second time because he was "furious" that she had failed to show up at his house with a thirteen-year-old girl for his use. Those details were not included in the narrative Ms. Kennedy told to Defendants Bowthorpe and Lewis.

113. None of the Defendants informed the prosecutor or the Superior Court that Ms. Kennedy's story had changed ***yet again***. None of them advised the prosecutor or the Superior Court that the only witness against Mr. Hunter had a financial interest in the criminal proceedings due to her civil lawsuit. The narrative presented in the Affidavit of Probable Cause was again undermined. Defendants Chelan County and Bowthorpe should have ensured that the Superior Court was informed so that it could reconsider the finding of probable cause and/or the amount of bail and the conditions of release.



LAW OFFICE OF
ELENA GARELLA pllc
2775 Harbor Avenue SW Suite D
Seattle WA 98126

**<u>Investigation stalls as Mr. Hunter languishes in jail</u>.**

114. The video footage recorded on July 29, 2023 from Mr. Hunter's property was never obtained by any of the Defendants. This was crucial evidence that the Defendants were aware existed. The failure to obtain the footage was indicative of the Defendants' reckless disregard of the truth, and/or deliberate indifference to Mr. Hunter's rights, and/or gross incompetence and/or malicious intent to keep Mr. Hunter in jail.

115. Mr. Hunter's own investigator ultimately retrieved the July 29, 2023 video and provided it to Mr. Hunter's attorney.

116. Although the video significantly undermines the alleged victim's story (*see* ¶¶35-38), Defendant Bowthorpe did not review the video and did not provide it or describe it to either the prosecutor or the Superior Court. Nor did he advise them that the video was available, but that he had elected to not review it. This information should have been promptly provided so that the Court could reconsider the finding of probable cause and/or the high bail required.

117. Ms. Kennedy was tested with a SANE kit (a sexual assault evidence collection kit) on July 29, 2023.

118. Mr. Hunter was swabbed on July 30, 2023. Mr. Hunter's DNA was also immediately available through the Kent Police Department and/or the



LAW OFFICE OF
ELENA GARELLA pllc
2775 Harbor Avenue SW Suite D
Seattle WA 98126

Washington State Patrol.

119. The toxicology report on Ms. Kennedy's SANE kit was completed on November 21, 2023. Her groin swabs established the presence of DNA from three different men.

120. Defendants Bowthorpe and Lewis were aware that Ms. Kennedy had consensual sexual partners within the last seven days before the alleged rape. They made no efforts to obtain elimination swabs from the consensual partners. This is a required investigative step requested by the crime lab. There is no excuse for not taking that step.

121. Defendants Bowthorpe and Lewis did not compare the DNA from the SANE kit to Mr. Hunter's sample from Kent.

122. Defendants Chelan County, Bowthorpe and Lewis did not arrange to have Mr. Hunter's DNA, taken on July 30, 2023, compared to the DNA left by three males in Ms. Kennedy. The SANE kit and Mr. Hunter's buccal swabs should have been submitted to the lab together to allow the forensic laboratory to compare Mr. Hunter's DNA to the DNA on Ms. Kennedy. For this reason, the November 21, 2023 lab report could not exclude Mr. Hunter.

123. Defendants Chelan County, Bowthorpe and Lewis waited months to submit Mr. Hunter's buccal swabs to the crime laboratory. By failing to request



LAW OFFICE OF
ELENA GARELLA pllc
2775 Harbor Avenue SW Suite D
Seattle WA 98126

the comparative analysis of his swabs with Ms. Kennedy's SANE kit, the Defendants acted in reckless disregard of the truth. The Defendants were content to have Mr. Hunter rot in jail as they "slow-walked" the investigation.

124. On or about August 29, 2023, Mr. Hunter retained a criminal defense attorney, Nicole Hankins.

125. In October 2023, Ms. Hankins requested discovery from the Prosecuting Attorney's office, including all communications among the law enforcement officers about Mr. Hunter's case, police dispatch notes and messages, results from the searches of Mr. Hunter's electronic devices, the crime laboratory results, and information regarding Ms. Kennedy's claimed interactions with the FBI.

126. Ms. Hankins never received the discovery she sought. Upon information and belief, the prosecutor sought that discovery from the Defendants and the Defendants failed to provide it.

**<u>The December 8, 2023 hearing</u>**.

127. On December 5, 2023, Ms. Hankins filed a motion and memorandum with the Superior Court, seeking a bail reduction for Mr. Hunter. She also provided the court with the video showing the events of July 29, 2023.

128. Still disturbed by the Affidavit of Probable Cause, and without the



LAW OFFICE OF
ELENA GARELLA pllc
2775 Harbor Avenue SW Suite D
Seattle WA 98126

exculpatory evidence held by the Defendants, Prosecutor Meadows opposed the bail reduction motion, insisting that there were "other possible victims" of Mr. Hunter.

129. The Superior Court conducted the hearing on the bail reduction motion on December 7, 2023. The July 29, 2023 video was played in court.

130. The Superior Court reduced the bail to $750,000.

131. Also on December 7, 2023, the Superior Court ordered that if Mr. Hunter posted bail, he would be detained in his home with electronic home monitoring.

132. On December 13, 2023, the Superior Court reduced Mr. Hunter's bail again, now to a $750,000 bond or $75,000 in cash.

133. On December 14, 2023, Mr. Hunter posted $75,000 for bail.

134. On December 15, 2023, Mr. Hunter was released from jail to home confinement. The Chelan County Regional Jail outfitted him with an electronic home monitoring (EHM) device attached around his ankle.

**Mr. Hunter's wrongful home confinement.**

135. During his home confinement, Mr. Hunter was only permitted to leave his residence for medical appointments and to take care of his friend's animals at an address in Manson, Washington.



LAW OFFICE OF
ELENA GARELLA pllc
2775 Harbor Avenue SW Suite D
Seattle WA 98126

136. The EHM that the jail attached to Mr. Hunter's ankle was a large, approximately five-pound, device that caused Mr. Hunter's leg to become painful, bruised, and swollen. His leg was in constant pain for the five months of home confinement.

137. On or about March 19, 2024, Defendant Senseney received a crime laboratory report dated March 18, 2024. Over seven months after Mr. Hunter's arrest, the investigating officers finally received the results of a test that compared Hunter's buccal swabs to the SANE Kit which had been processed four months before. **Darren Hunter was excluded as a contributor to the DNA profile obtained from the groin swabs**.

138. The March 18, 2024 laboratory report was further evidence that Ms. Kennedy had lied to the investigators. She had claimed that Mr. Hunter had raped her and ejaculated inside her. This claim was fundamental to the decision by Defendants Morrison, Bowthorpe, Biggar, Lewis, Mathena, Mutch, Senseney to arrest Mr. Hunter. It was also a salient claim set forth in Defendant Bowthorpe's Affidavit of Probable Cause.

139. Nonetheless, on information and belief, the Defendants did not advise the prosecutors or the Superior Court of the new laboratory report. Mr. Hunter was still facing charges, confined to his home, and wearing a painful ankle monitor.



LAW OFFICE OF
ELENA GARELLA pllc
2775 Harbor Avenue SW Suite D
Seattle WA 98126

The exonerating laboratory report should have been promptly reported. The failure to do so shows Defendants' reckless disregard of the truth, deliberate indifference, gross incompetence, and/or malicious intent to keep Mr. Hunter in jail.

**Dismissal of the charges against Mr. Hunter**.

140. On June 24, 2024, the state submitted a motion to dismiss all charges without prejudice. Prosecutor Meadows finally had been apprised of all of the results of the March 18, 2024 laboratory report. She certified under penalty of perjury that "[t]he State, having reviewed the evidence and spoken to pertinent witnesses, does not believe it has sufficient evidence at this time to prove its case beyond a reasonable doubt."

141. On June 28, 2024, the Superior Court of the State of Washington, Chelan County, dismissed the charges against Mr. Hunter, exonerated his bail, and eliminated the home monitoring requirement.

142. The CCSO did not issue a press release to announce the dismissal of the charges against Mr. Hunter.

**The employment of Cyrus Bowthorpe.**

143. Prior to working for the CCSO, Defendant Bowthorpe was employed by the King County Sheriff's Office as a detective.

144. In 2021, while at the King County Sheriff's Office, Defendant



LAW OFFICE OF
ELENA GARELLA pllc
2775 Harbor Avenue SW Suite D
Seattle WA 98126

Bowthorpe was disciplined in an incident which indicates that this Defendant failed to comply with operational directives, exercised poor judgment, and escalated police activity without authorization, and failed performance standards.

145. Nothwithstanding this history, Defendants Chelan County and Morrison hired Defendant Bowthorpe. The Defendants either failed to adequately research Defendant Bowthorpe's background or disregarded that background.

146. Having hired Defendant Bowthorpe, the CCSO and Defendants Chelan County and Morrison should have provided him with extensive re-training and subjected him to close supervision. On information and belief, they did not do so.

**<u>The officers' inadequate training and insufficient supervision</u>.**

147. Unfortunately, what happened to Mr. Hunter was not an isolated incident. His arrest and confinement is only one example of Defendant Chelan County's troubling conduct when people are suspected of sex crimes. The CCSO routinely fails to provide full investigatory reports and information to the prosecutors, causing suspects to be confined in pre-trial detention in violation of their Constitutional rights.

148. Other men have been victimized by the County in a manner reflecting Mr. Hunter's experience, such as arrest following inadequate investigation, public



LAW OFFICE OF
ELENA GARELLA pllc
2775 Harbor Avenue SW Suite D
Seattle WA 98126

announcement of alleged sex crimes, delay and detention, all followed by dismissal of the charges. These are believed to include Josue Barriga-Martinez, Jack Leeroy Rutter, Nicholas Turner, Wayne Latimer, and Robert Sifuentez.

149. For example, in Mr. Sifuentez' case, Defendant Bowthorpe filed an Affidavit of Probable Cause for charges of commercial sexual abuse of a minor and attempted rape of a child. Deputy Prosecuting Attorney, Micaela Meadows, moved for dismissal of those charges a year and a half later, certifying that:

> … the Prosecutor's Office [has] discovered it had not been provided SMS and MMS messages by law enforcement… between the undercover law enforcement officer and the defendant. **These messages had not been disclosed as discovery because they were not provided to the Prosecutor's Office**… not disclosing them constitutes a prejudicial discovery violation to both the defendant's and State's case. [emph. added]

150. Another example: Wayne Latimer, a 72-year-old East Wenatchee man, was charged with possession of child pornography in June of 2022. His life and his chiropractic practice were devastated. The charges were dismissed by the prosecutor over a year later. It turned out that the CCSO did not in fact have evidence that Mr. Latimer had uploaded any illegal images.

151. At Mr. Latimer's dismissal hearing, Mr. Latimer's defense attorney, Bradon Redal, reminded the court of the Wenatchee "sex rings" prosecutions of



LAW OFFICE OF
ELENA GARELLA pllc
2775 Harbor Avenue SW Suite D
Seattle WA 98126

the early 1990s:

> It leads me to question whether or not we really learned the lessons that we should have learned in this valley 25 years ago… Hopefully bringing things like this to light… will cause us to learn, will cause people to maybe investigate before we charge people with crimes that are, just by virtue of being charged, are fundamentally life altering.

Following the dismissal, Mr. Redal pointed out that "[a]ll of the red flags were ignored," he said. "It's a product of a rush to judgment, tunnel vision, whatever you want to call it. That's what it was. People need to know."

152. On information and belief, discovery will uncover additional victims of the CCSO's and the County's failures to properly investigate and to fully and timely disclose material exculpatory information to the prosecutor and the Superior Court. These failures have resulted in unjustified arrests and detentions. The dismissals of these men's cases put Defendants Morrison and Chelan County on notice of their officers' failures to adequately investigate allegations of sex crimes and to promptly disclose investigatory material even as suspects face trial on serious, humiliating, charges.

153. Upon information and belief, the CCSO provides no or insufficient or erroneous formalized training on probable cause or what constitutes sufficient evidence to establish probable cause where an allegation of sexual abuse is made.

154. Defendants Chelan County and Morrison endorse the "START BY



LAW OFFICE OF
ELENA GARELLA pllc
2775 Harbor Avenue SW Suite D
Seattle WA 98126

BELIEVING" public awareness campaign and/or a similar program with a similar ideology. "START BY BELIEVING" is a national campaign which teaches law enforcement that upon hearing a complaint of sexual victimization, officers should "start" by assuming that the victim is not lying.

155. "Start by believing" is an improper investigative technique. Law enforcement officers have a duty to remain neutral. They must reserve "believing" until after the facts have been gathered and a reasonable belief can be formed. Indeed, courts excuse prospective jurors who state that they will start by believing a victim, rather than with the presumption of innocence. *See, e.g.*, State v. Tesfasilasye, 200 Wn.2d 345, 352 (2022).

156. CCSO officers are trained in the 'START BY BELIEVING' methodology, or similar training. This training results in each officer signing a pledge that "[w]hen someone tells me they were raped or sexually assaulted, I pledge to start by believing." On information and belief, Defendants Bowthorpe, Biggar, Lewis, Mathena, Mutch, and Senseney have signed that pledge and/or have adopted this aspect of their training.

157. Defendant Morrison arranged and approved for CCSO officers to be trained in the "START BY BELIEVING" program, or a similar program. That training caused or contributed to the deficiencies in the investigation of Mr.



LAW OFFICE OF
ELENA GARELLA pllc
2775 Harbor Avenue SW Suite D
Seattle WA 98126

Hunter, the faulty Affidavit of Probable Cause, and the failure to timely obtain and provide investigatory materials to the prosecutor so that charges could be dropped.

158. Upon information and belief, supervising officers of the CCSO rarely or never offer guidance to CCSO officers regarding what is necessary to include in a probable cause affidavit, including the obligation to include exculpatory evidence, whether to exclude evidence that is irrelevant, or whether certain facts, omissions, and/or characterizations may mislead the court.

159. Upon information and belief, supervising officers of the CCSO rarely or never offer guidance to CCSO officers regarding how quickly evidence must be obtained, what is necessary to provide to the prosecutor's office, and when it should be provided.

160. There are either no, or demonstrably inadequate, processes adopted by Defendant Morrison to ensure that CCSO officers are reminded of their legal obligations.

161. The CCSO loosens the standards for probable cause and the drafting of affidavits of probable cause when a person is suspected of a sex crime.

162. Because, in part, of the lack of training and lack of a system to ensure that detectives review legally correct policy directives, Defendants Bowthorpe, Biggar, Lewis, Mathena, Mutch, and Senseney did not adhere to the probable



LAW OFFICE OF
ELENA GARELLA pllc
2775 Harbor Avenue SW Suite D
Seattle WA 98126

cause policies and the investigative standards required by the Constitution of the United States.

163. The Defendants knew, or should have known, that Ms. Kennedy's stories were inaccurate, false and unreliable. They knew, or should have known, that Ms. Kennedy was on a mission to provide misinformation about Darren Hunter to the authorities. The failure to consider these facts before arresting Mr. Hunter, and the failure to fully advise the Superior Court and the Prosecuting Attorney's Office of those facts, and the inadequacies of the investigation, both before and during Mr. Hunter's confinement, were caused by official policy and/or a direct choice by one or more lawmaking officers. These practices are so persistent and widespread as to practically have the force of law.

**Consequences of Plaintiff's wrongful arrest, detention in jail, and home confinement.**

164. Darren Hunter was significantly damaged by the Defendants.

165. Some of the damage was financial. He paid his defense attorney over $300,000. He had to pay various other costs, including payments for the EHM device. He lost income due to the more than ten-month period of confinement. His car had been repossessed. He was in substantial debt.

166. Other damage was professional. He was compelled to abandon the career in realty that he had been pursuing before he was arrested. There can be no



LAW OFFICE OF
ELENA GARELLA pllc
2775 Harbor Avenue SW Suite D
Seattle WA 98126

career as a real estate agent because the charges against him remain on the internet, driving away prospective clients and employers. He now works as a plumber.

167. There was physical damage. Mr. Hunter received medical attention for the damage caused to his leg by the ankle monitor. His leg took about a year to recover.

168. But the worst damage was psychological and emotional. Having committed no crime, he was arrested and locked up on false charges of rape, assault, and kidnapping. He was treated with contempt by the police, correctional officers, and inmates. He lived in fear while in jail. Most of his friends abandoned him after the false charges destroyed his reputation. He has been humiliated.

169. Upon dismissal of the charges, Mr. Hunter's ordeal was far from over. He continues to be rejected by former friends and acquaintances. Before the arrest, he had over 400 friendly contacts on his phone. Now he has twelve. People who used to be sociable with him now turn away, shaking their heads, or ignoring him. He cannot feel comfortable at local events due to the shunning. He therefore does not go to such events. He also avoids crowded public places in his own community.

170. Mr. Hunter suffers from Post Traumatic Stress Disorder. He often feels extremely anxious. Sometimes angry. Sometimes panicked. He wakes up at



LAW OFFICE OF
ELENA GARELLA pllc
2775 Harbor Avenue SW Suite D
Seattle WA 98126

night thinking that he may be arrested for something he did not do, and cannot sleep. He wants a normal, productive, life but it remains out of his grasp.

171. Mr. Hunter is deeply aggrieved that law enforcement depended on Rachel Kennedy, whom they knew was unreliable, rather than conducting a sufficient investigation before arresting and jailing him. He does not believe that he—or any other person--should live in fear of arrest and imprisonment because the police "start by believing" an alleged victim and precipitously upend an innocent person's life.

## V. CAUSES OF ACTION

172. 42 U.S.C. § 1983 provides a remedy for individuals who have been deprived of their constitutional rights under color of state law. *See, e.g.,* City of Monterey v. Del Monte Dunes, 526 U.S. 687, 707 (1999). The statute provides that "[e]very person who, under color of [law]…, subjects, or causes to be subjected, any citizen of the United States… to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983.

173. The Fourth Amendment to the United States Constitution guarantees the right of the people "to be secure in their persons… against unreasonable… seizures" and demands that "no Warrants shall issue, but upon probable cause,



LAW OFFICE OF
ELENA GARELLA pllc
2775 Harbor Avenue SW Suite D
Seattle WA 98126

supported by Oath or affirmation."

174. The Due Process Clause provides: "No State shall . . . deprive any person of life, liberty, or property, without due process of law," U.S. Const. amend. XIV, § 1.

**Count I – Unlawful Arrest**

175. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

176. Defendants Bowthorpe, Biggar, Lewis, Mathena, Mutch, and Senseney arrested Mr. Hunter in the absence of probable cause and without a warrant.

177. Law enforcement officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen. To the extent that any individual defendant did not directly participate in the deprivation of Mr. Hunter's constitutional rights, that defendant failed in his duty to intercede.

178. The Fourth Amendment requires that the investigating officer will present his or her evidence in good faith. The law recognizes that an officer who obtains a warrant under false pretenses violates the constitutional rights of the individual against whom that warrant issues.

179. Defendant Bowthorpe procured a finding of probable cause from the



LAW OFFICE OF
ELENA GARELLA pllc
2775 Harbor Avenue SW Suite D
Seattle WA 98126

Superior Court of Washington, Chelan County, which finding approved the prior warrantless arrest of Mr. Hunter. Defendant Bowthorpe was able to procure that finding only because he knowingly or recklessly misrepresented the evidence provided to him by Ms. Kennedy. There was no probable cause justifying Mr. Hunter's arrest.

180. Because Defendant Bowthorpe knowingly and recklessly misrepresented and omitted key facts about the evidence, a Judge found probable cause.

181. By failing to disclose obviously exculpatory information that was known to Defendant Bowthorpe at the time he presented the Affidavit of Probable Cause, by presenting misleading evidence, and by failing to disclose the inadequacy of his investigation, Defendant Bowthorpe invaded the liberty guaranteed to Mr. Hunter by the Fourth Amendment and the Due Process Clause.

182. The County and Defendant Morrison failed in their duties to review Defendant Bowthorpe's conduct and to train him with respect to the duties he has towards Mr. Hunter and all other citizens.

183. These abuses of Mr. Hunter's rights are the result of official policy and/or a direct choice by one or more lawmaking officers and/or practices so persistent and widespread as to practically have the force of law (custom).



LAW OFFICE OF
ELENA GARELLA pllc
2775 Harbor Avenue SW Suite D
Seattle WA 98126

Defendants Chelan County and Morrison are liable under Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691, 694 (1978).

**Count II – Excessive Force**

184. Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs.

185. The Fourth Amendment prohibits the use of unreasonable force against a suspect. Guite v. Wright, 147 F.3d 747, 750 (1998).

186. Defendants Mathena, Biggar, Lewis, Senseney, and Mutch physically forced Mr. Hunter to march to Defendant Mutch's patrol vehicle and placed handcuffs on him that were tight enough to cause severe pain.

187. There was no reason to employ that level of force. Mr. Hunter was not resisting or attempting to escape. By manhandling Mr. Hunter to the car and cruelly tightening his handcuffs, Defendants Mathena, Biggar, Lewis, Senseney, and Mutch violated his right to be free of unreasonable seizure.

**Count III – Unreasonable Pre-Trial Detention**

188. Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs.

189. Pretrial detention in the absence of probable cause violates the Fourth Amendment and the Due Process Clause. Government officials may not detain a



LAW OFFICE OF
ELENA GARELLA pllc
2775 Harbor Avenue SW Suite D
Seattle WA 98126

person, or cause continued detainment, without probable cause, even where a court has previously found probable cause. Manuel v. City of Joliet, 580 U.S. 357, 363 (2017).

190. By failing to provide the exculpatory evidence, discovered after Mr. Hunter's arrest to the Prosecuting Attorney's Office, to Mr. Hunter's defense attorney and to the Superior Court, Defendant Bowthorpe caused Mr. Hunter to be jailed for over four months, and then be confined to his home for another five months.

191. Defendants Chelan County and Morrison failed to adequately research Defendant Bowthorpe's history of misconduct, causing them to hire an officer with insufficient training, and/or professionalism, and/or judgment. In the alternative, Defendants Chelan County and Morrison elected to hire Defendant Bowthorpe notwithstanding his history of misconduct, and then did not have him either re-trained or closely supervised.

192. Defendant Bowthorpe misled the prosecutors regarding the state of the evidence relating to Mr. Hunter's alleged crimes and related crimes. He is responsible for Mr. Hunter's continued and unreasonable pretrial detention.

193. The proceedings were instituted and continued through Defendant Bowthorpe's malice. The evidence of that malice is established by his conduct on



LAW OFFICE OF
ELENA GARELLA pllc
2775 Harbor Avenue SW Suite D
Seattle WA 98126

the day of Mr. Hunter's arrest.

194. Mr. Hunter suffered financial, emotional, reputational, and physical injuries as a result of the conduct of Defendants Bowthorpe, CCSO and Chelan County,

195. The plaintiff has stated a Fourth Amendment constitutional injury that may be vindicated through a § 1983 action. Albright v. Oliver, 510 U.S. 266 (1994).

196. These abuses of Mr. Hunter's rights are the result of official policy and/or a direct choice by one or more lawmaking officers and/or practices so persistent and widespread as to practically have the force of law (custom). Defendants Chelan County and Morrison are liable under Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691, 694 (2018).

**Count IV – Failure to train and supervise**

197. Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs.

198. Defendants Chelan County and Morrison had the ultimate responsibility and authority to train and supervise their employees, agents, and/or representatives including the other Defendants regarding their duties toward suspects, the courts, defense attorneys, and the Prosecuting Attorney's Office.



LAW OFFICE OF
ELENA GARELLA pllc
2775 Harbor Avenue SW Suite D
Seattle WA 98126

199. Defendants Chelan County and Morrison failed to train and supervise the other Defendants as set forth in allegations numbered 147 - 163, above.

182. As a result, Defendants Chelan County, Morrison, Bowthorpe, Biggar, Lewis, Mathena, Mutch, and Senseney deprived Plaintiff of rights secured by the Fourth and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. § 1983.

## VI. RELIEF REQUESTED

Wherefore, Plaintiff Darren Hunter prays for:

a. Damages as may be proven at trial to compensate Plaintiff for all pain, physical injury, suffering, humiliation, shame, embarrassment, emotional distress and reputational damage caused by being falsely arrested, imprisoned and subjected to home confinement with an EHM device.

b. Damages as may be proven at trial to compensate Plaintiff for lost income caused by the unlawful arrest, imprisonment and home confinement.

c. Damages as may be proven at trial to compensate Plaintiff for amounts he was required to incur as a result of the unlawful arrest, imprisonment and home confinement.

d. Interest on all sums awarded to Plaintiff from the date of the events and/or losses.



LAW OFFICE OF
ELENA GARELLA pllc
2775 Harbor Avenue SW Suite D
Seattle WA 98126

e. An award of Plaintiff's reasonable attorneys' fees and costs of this action, pursuant to 42 U.S.C § 1988 and any other applicable law.

f. A judgment declaring that Defendants violated Plaintiff's rights under the Fourth Amendment of the U.S. Constitution; and

g. Any further or other relief the Court deems just, equitable, and proper.

Respectfully submitted this 1st day of October, 2026.

LAW OFFICE OF ELENA GARELLA PLLC

Elena Garella
_______________________________
Elena Luisa Garella, WSBA 23577
Karen Knutsen, WSBA 51600
2775 Harbor Ave SW, Ste D
Seattle, WA 98126
egarella@gmail.com; (206) 675-0675
kknutsen27@gmail.com; (206) 696-7070
*Attorneys for Darren Hunter*

## CERTIFICATE OF SERVICE

I certify that on the 1st day of October, 2026, I caused a true and correct copy of this document to be served on the following by e-filing through the CM/ECF system:

Kirk A. Ehlis
Menke Jackson Beyer, LLP
807 N 39th Ave
Yakima, WA 98902
kehlis@mjbe.com
*Attorney for All Defendants*

Karen Knutsen
Karen Knutsen, WSBA 51600